No. 15-10614

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

EVELYN SINENENG-SMITH,
Defendant-Appellant.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
DISTRICT COURT NO. 10-CR-0414 RMW
_____

**PETITION FOR REHEARING EN BANC**
_____

DAVID L. ANDERSON
United States Attorney

MERRY JEAN CHAN
Acting Chief, Appellate Division

BRIAN A. BENCZKOWSKI
Assistant Attorney General

MATTHEW S. MINER
Deputy Assistant Attorney General

ANDREW W. LAING
Attorney
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530
(202) 353-8433
andrew.laing@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT OF REASONS FOR EN BANC CONSIDERATION ..................... 1

STATEMENT OF THE ISSUE .................................................................... 2

BACKGROUND AND PANEL DECISION ..................................................... 2

ARGUMENT ............................................................................................ 7

    I.    THE PANEL ERRED BY FOCUSING EXCLUSIVELY ON A DIFFERENT, NON-AGGRAVATED VERSION OF SINENENG-SMITH'S OFFENSE ...................................................... 7

    II.    THE PANEL ERRED BY REJECTING A REASONABLE LIMITING CONSTRUCTION OF THE STATUTE .......................... 9

CONCLUSION ........................................................................................ 14

## TABLE OF AUTHORITIES

**Cases**

*Altamirano v. Gonzales*, 427 F.3d 586 (9th Cir. 2005) ..................................... 5, 12

*Apprendi v. New Jersey*, 530 U.S. 466 (2000)...........................................................8

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ......................................................2, 9

*DelRio-Mocci v. Connolly Props. Inc.*, 672 F.3d 241 (3d Cir. 2012) .......... 7, 11, 13

*Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975) ........................................10

*L.A. Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32
      (1999).........................................................................................................9

*Powell's Books, Inc. v. Kroger*, 622 F.3d 1202 (9th Cir. 2010) .............................10

*United States v. Henderson*, 857 F. Supp. 2d 191 (D. Mass. 2012) .......................14

*United States v. Williams*, 553 U.S. 285 (2008) ....................................................13

*Virginia v. Hicks*, 539 U.S. 113 (2003) ...................................................................9

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442
      (2008).........................................................................................................9

**Statutes and Rules**

8 U.S.C. § 1324 ............................................................................... passim

Fed. R. App. P. 35 .................................................................................2

## STATEMENT OF REASONS FOR EN BANC CONSIDERATION

The panel struck down a federal criminal immigration statute as facially overbroad in violation of the First Amendment, rejecting a reasonable limiting construction that would have saved the statute and Evelyn Sineneng-Smith's convictions. Sineneng-Smith encouraged and induced aliens present in the United States to remain in the country illegally by fraudulently promising that she would submit applications she knew were futile for a government program she knew no longer existed, all in exchange for thousands of dollars per "client." She was convicted of, among other things, encouraging and inducing illegal immigration for private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) & (B)(i).

The panel committed significant legal errors that merit en banc review. First, it confined its analysis to Section 1324(a)(1)(A)(iv), which criminalizes "encourag[ing] or induc[ing]" an alien to enter or reside in the United States in violation of law, thus disregarding the fact that Sineneng-Smith herself was charged with and convicted of an aggravated version of the offense—encouraging or inducing for private financial gain—that does not implicate many of the overbreadth concerns the panel raised. Second, the panel rejected a reasonable limiting construction of Section 1324(a)(1)(A)(iv), creating inconsistency with a prior opinion of this Court, a split with the Third Circuit, and tension with the Supreme Court's repeated admonition to regard the overbreadth doctrine as "strong

medicine" to be applied "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).

Because the panel's ruling conflicts with this Court's, the Third Circuit's, and the Supreme Court's cases by invoking the First Amendment to invalidate a criminal statute rather than applying a readily available limiting construction, en banc review is warranted. *See* Fed. R. App. P. 35(b)(1).

## STATEMENT OF THE ISSUE

Whether a statute that criminalizes "encourag[ing] or induc[ing] an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law," 8 U.S.C. § 1324(a)(1)(A)(iv), for private financial gain, 8 U.S.C. § 1324(a)(1)(B)(i), is facially overbroad in violation of the First Amendment.

## BACKGROUND AND PANEL DECISION

1.     For almost 20 years, Sineneng-Smith ran an immigration consultation business with offices in California, Nevada, and New York.  D. Ct. Doc. 224 (Order Granting in Part and Denying in Part Mot. for Acquittal and Denying Mot. for New Trial) ("Rule 29 Order"), at 1-2.  Sineneng-Smith promoted a Department of Labor certification program as a pathway through which her foreign-national clients could eventually obtain permanent resident employment-based visas, despite knowing that clients who missed an April 30, 2001 deadline could never be

eligible for such visas, and despite knowing that her clients had overstayed their visas and were working illegally. *Id.* at 2-3. She charged each client $5,900 to file a futile application with the Department of Labor, and an additional $900 to file a futile application with Citizenship and Immigration Services. *Id.* at 3.

2.      A jury in the Northern District of California found Sineneng-Smith guilty on three counts of encouraging and inducing illegal immigration for private financial gain and three counts of mail fraud. The district court thereafter granted her motion for a judgment of acquittal under Fed. R. Crim. P. 29 as to the counts pertaining to one of the three clients. *Id.* at 3, 8-10, 16-17. As to the immigration counts, the district court summarized the government's theory as follows:

> [T]he government alleges that Sineneng-Smith encouraged her clients to reside illegally in the United States by suggesting to them that the applications she would make on their behalf would allow them to eventually obtain legal permanent residency in the United States. In other words, the government's proof of encouragement is based on the impression Sineneng-Smith fostered in her clients that they would be able to obtain a green card through her services.

*Id.* at 7.

3.      Sineneng-Smith appealed, arguing that the evidence was insufficient to support her encouraging-and-inducing and mail fraud convictions, and raising numerous other challenges to her encouraging-and-inducing convictions, including, as relevant here, a contention that the charged conduct was protected by

the Petition Clause and the Free Speech Clause of the First Amendment. Appellant Br. 9-53.

Following oral argument, the panel *sua sponte* ordered the parties (as well as multiple amici) to submit additional briefing to address three issues that Sineneng-Smith had not presented to the Court in her opening brief: (1) whether the encouraging-and-inducing statute "is overbroad or likely overbroad under the First Amendment"; (2) whether the statute "is void for vagueness or likely void for vagueness"; and (3) whether the statute "contains an implicit *mens rea* element which the Court should enunciate." 09/18/17 Panel Order.

The parties and nine amici filed briefs pursuant to the panel's new order. Amici's overbreadth arguments (which Sineneng-Smith adopted without elaboration, Appellant Supp. Br. 1) primarily focused on the term "encourage," which they read as reaching wide swaths of First Amendment-protected speech regarding immigration. *See, e.g.*, ACLU Br. 19-20 (arguing § 1324(a)(1)(A)(iv) criminalizes "expressing one's views about immigration on the Internet, discussing the state of immigration law and its enforcement with a foreigner visiting the United States, speaking to a family member about options in a crisis, or forging innovative legal theories about this complex body of law").

With respect to overbreadth, the government first pointed out that Sineneng-Smith had (until the panel's post-argument order) never specifically argued that

Section 1324(a)(1)(A)(iv) is overbroad under the First Amendment, and therefore the Court should review for plain error. Gov't Supp. Br. 2-3. The government next argued that the terms "encourage[]" and "induce[]" as used in the statute can readily be construed to obviate any First Amendment concerns: it explained that, like Sections 1324(a)(1)(A)(i)-(iii),[1] Section 1324(a)(1)(A)(iv) should "be interpreted to require *specific actions* that facilitate an alien's coming to, entering, or residing in the United States illegally." *Id.* at 7 (emphasis added). The government noted that this interpretation was consistent with this Court's previous interpretation of a different statute containing the words "encouraged, induced, assisted, abetted, or aided" as requiring "'an affirmative act of assistance.'" *Id.* at 8-9 (quoting *Altamirano v. Gonzales*, 427 F.3d 586, 594 (9th Cir. 2005)). Additionally, collecting several cases from other courts, the government urged the panel to read a non-*de-minimis* requirement into the statute. *Id.* at 11-12.

The panel unanimously held that Section 1324(a)(1)(A)(iv) is unconstitutionally overbroad and vacated Sineneng-Smith's encouraging or inducing convictions.[2] Add. 5-6. Disposing of the statute on overbreadth grounds,

---

[1] The preceding three subsections of the statute proscribe bringing an alien to a place other than a designated port of entry; transporting within the United States an alien who is present in the United States in violation of law; and concealing, harboring, or shielding an alien present in the United States in violation of law. 8 U.S.C. § 1324(a)(1)(A)(i)-(iii).

[2] The Court separately affirmed Sineneng-Smith's two mail fraud convictions. Add. 5 n.1

the panel declined to reach the vagueness issue it had raised in its order. *Id.* at 42 n.15.

From the outset, the panel repeatedly emphasized its conclusion that no "reasonable reading of the statute can exclude speech," and "[t]o conclude otherwise, we would have to say that 'encourage' does not mean encourage, and that a person cannot 'induce' another with words"; in short, the panel believed that Section 1324(a)(1)(A)(iv) "criminalizes a substantial amount of constitutionally-protected expression" and that its "burden on First Amendment rights is intolerable when compared to [its] legitimate sweep." Add. 6.

Reasoning that the dictionary definitions of "encourage" and "induce" "can encompass both speech and conduct," the panel turned to the context in which the terms are used in the statute; specifically, it rejected the government's argument that the two verbs, like the verbs in the preceding three subsections of the statute, should be read to require specific actions, reasoning that "the structure of the section lends itself to the more obvious conclusion that the verbs in the subsections must mean different things because they form the basis of separate charges." Add. 18-21. The panel also expressed skepticism that any non-speech conduct would be covered by subsection (iv) but not one of the other subsections of the statute, suggesting that interpreting subsection (iv) as applying only to non-speech conduct would render it superfluous. *Id.* at 22. Further, the panel rejected the argument

that the statute can be interpreted to contain a non-*de-minimis* requirement, noting "the absence of statutory text to that effect" and conceding that its decision created a split with the Third Circuit. *Id.* at 26 (citing *DelRio-Mocci v. Connolly Props. Inc.*, 672 F.3d 241, 246-248 (3d Cir. 2012)).

Based on its conclusion that the statute could not be read to cover only non-*de-minimis* conduct, the panel reached the ultimate conclusions that the statute "is susceptible to regular application to constitutionally protected speech and that there is a realistic (and actual) danger that the statute will infringe upon recognized First Amendment protections." Add. at 38. It stated that, for example, "a loving grandmother who urges her grandson to overstay his visa by telling him 'I encourage you to stay'" could "face felony charges for her statement" under Section 1324(a)(1)(A)(iv), and that "a speech addressed to a gathered crowd" containing language along the lines of "'I encourage all you folks out there without legal status to stay in the U.S.!'" would similarly run afoul of the law. *Id.* at 38-40 (cleaned up).

## ARGUMENT

### I. THE PANEL ERRED BY FOCUSING EXCLUSIVELY ON A DIFFERENT, NON-AGGRAVATED VERSION OF SINENENG-SMITH'S OFFENSE

As a threshold matter, the panel erred by confining its overbreadth analysis—including its assessment of hypothetical applications of the statute here

to speech—to the non-aggravated version of the offense, Section 1324(a)(1)(A)(iv) alone, rather than to the offense actually charged and proved to the jury. Sineneng-Smith was convicted of a crime that required proof that "the offense was done for the purpose of commercial advantage or private financial gain." 8 U.S.C. § 1324(a)(1)(B)(i). That fact raised the statutory maximum penalty for her offense (from five years of imprisonment to 10, *see* 8 U.S.C. § 1324(a)(1)(B)(i) & (ii)), was required to be included in the indictment and found beyond a reasonable doubt by the jury, and is thus properly treated as an element of her crime. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000). Properly including that element in the analysis substantially limits the scope of the offense, and renders it clearly inapplicable to most, if not all, of the hypotheticals the panel identified as involving arguably protected speech. *See, e.g.*, Add. 40 (listing "[a] speech addressed to a gathered crowd" or "on social media" encouraging people without legal status to stay in the United States as scenarios reached by the statute).

Even if the aggravated offense would still encompass some types of protected speech,[3] it would not necessarily be overbroad. A statute is overbroad

---

[3] Legitimate legal advice, which the panel believed is criminalized under Section 1324, Add. 41, could hypothetically satisfy the "financial gain" element of subsection (B)(i), but it would fall outside the statute for a different reason: a lawyer helping to advance a good-faith argument that an alien should ultimately be permitted to remain in the United States does not act in "knowing or in reckless disregard of the fact that [the alien's] coming to, entry, or residence is or will be in violation of law." 8 U.S.C. § 1324(a)(1)(A)(iv).

only if it has "a *substantial* number of applications [that] are unconstitutional, judged in relation to [its] plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (emphasis added). The panel took the view that it could properly focus only on a lesser-included offense, defined solely by § 1324(a)(1)(A)(iv), primarily because that provision alone, in the panel's eyes, creates the sort of "chilling effect" that the overbreadth doctrine aims to cure. Add. 14 n.5. But it is far from clear that the overbreadth doctrine allows a defendant whose conduct is legitimately proscribed to rely upon the chilling effect of a *different* version of a criminal prohibition to escape prosecution. *See L.A. Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32, 39-40 (1999) (describing limited function of facial overbreadth adjudication).

## II. THE PANEL ERRED BY REJECTING A REASONABLE LIMITING CONSTRUCTION OF THE STATUTE

The panel concluded that Section 1324(a)(1)(A)(iv) is unconstitutionally overbroad after rejecting any interpretation of the statute that would narrow its scope, taking an approach at odds with the Supreme Court's repeated admonition that the overbreadth doctrine is "strong medicine" to be applied "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973); *see also Virginia v. Hicks*, 539 U.S. 113, 119 (2003) ("[T]here are substantial social costs *created* by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, or especially to constitutionally unprotected

9

conduct."). En banc review of the panel's decision is warranted for four reasons: first, the panel too hastily dismissed a reasonable limiting construction of the statute that does not criminalize protected speech, in tension with the Supreme Court's admonition to apply the overbreadth doctrine as a last resort; second, the panel's reasoning is in tension with this Court's own precedent regarding a similarly worded statute; third, the panel's opinion creates a split with the Third Circuit, which has embraced a reasonable limiting construction of this statute; and fourth, after erroneously concluding that subsection (iv) reaches protected speech, the panel overstated the extent to which it does so.

1.     To determine whether a statute is overbroad, courts must (1) construe the challenged statute, and (2) determine whether the statue "criminalizes a 'substantial amount' of expressive activity." *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1208 (9th Cir. 2010). An overbroad statute may be invalidated only if it is "not readily subject to a narrowing construction." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975). Here, the panel flatly rejected the argument that "encourage[]" and "induce[]" can be interpreted as limited to actions, rejecting in turn both the argument that subsection (iv) should be read alongside the preceding subsections as similarly prohibiting actions (consistent with the canon of *noscitur a sociis*), and the argument that reading subsection (iv) in that way does not render it superfluous in light of those preceding subsections.

Add. 20-22. The panel erroneously suggested that the government's examples of acts that could constitute encouraging and inducing could all be covered under other subsections of the statute. They could not. Sineneng-Smith's own conduct, for example, clearly constituted acts that encouraged and induced aliens to remain in the United States unlawfully, and it is difficult to see how she could have been prosecuted under the other subsections of the statute, as her false promises to submit applications that would purportedly lead to long-term visas certainly did not constitute bringing (subsection (i)), transporting (subsection (ii)), or concealing (subsection (iii)) anyone. Indeed, as the Third Circuit has explained, if any interpretation of subsection (iv) risks rendering any part of the statute superfluous, it is the panel's own:

> [R]eading the encouraging or inducing subsection of the statute too broadly risks rendering the remaining subsections of 8 U.S.C. § 1324(a)(1)(A) redundant or superfluous. Subsection (i) prohibits bringing an alien lacking lawful immigration status to the United States other than at a designated port of entry. Subsection (ii) prohibits transporting such an alien within the United States in furtherance of their illegal presence in this country. Finally, subsection (iii) . . . prohibits harboring an alien not lawfully present. If we define "encourage" merely as "to help," then the particular conduct that is prohibited in subsections (i)-(iii) is subsumed by the general prohibition against helping an undocumented person to "come to, enter, or reside in" the United States in subsection (iv).

*DelRio-Mocci v. Connolly Props. Inc.*, 672 F.3d 241, 249 (3d Cir. 2012).

11

Particularly in light of the Supreme Court's urging that courts apply overbreadth as a "last resort," it is reasonable to construe this statute as applying to action in such a way as to remove any First Amendment concerns.

2.     The panel also entirely disregarded an earlier opinion of this Court that provides support for interpreting the statute along these lines.  As argued in the government's supplemental brief, in *Altamirano v. Gonzales*, this Court interpreted an immigration statute making inadmissible any alien who "knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law" as requiring some "affirmative act of assistance."  427 F.3d 586, 594 (9th Cir. 2005).  Although the Court stated that its reasoning in that opinion was "buttressed by the well-established meaning of aiding and abetting," its analysis ultimately rested on the straightforward conclusion that "[t]he plain meaning of [the] statutory provision" is that it requires "an *affirmative act* of help, assistance, or encouragement."  *Id.* at 593-594 (emphasis added).  This Court should reach the same conclusion with respect to the statute at issue here.

3.     As the panel acknowledged in its opinion, the panel's analysis opens a circuit split.  Relying in part on its own precedent and in part on the common, plain-language definitions of "encourage" and "induce," the Third Circuit has held that encouragement and inducement under this statute both require affirmative

action, and "that encouragement or inducement must also be 'substantial' to support a conviction under the statute." *DelRio-Mocci*, 672 F.3d at 248. The existence of this directly relevant case bolsters the government's contention that a straightforward limiting construction is readily available.

4. Finally, the panel's concern that the statute "is susceptible to regular application to constitutionally protected speech" is not realistic. Add. 38-39 (citing as an example "'a loving grandmother who urges her grandson to overstay his visa,' by telling him 'I encourage you to stay'"). The Supreme Court has cautioned against "fanciful hypotheticals" in the overbreadth context. *United States v. Williams*, 553 U.S. 285, 301-302 (2008) (rejecting argument that statute criminalizing "presenting" child pornography could encompass turning it over to law enforcement, noting that "we are aware of no prosecution for giving child pornography to the police"). The panel's lone example of the government's supposed "willingness to apply Subsection (iv) to potentially protected speech," Add. 38, derives from a district court opinion adopting the Third Circuit's interpretation of "encourage" and "induce" from *DelRio-Mocci* and concluding that the evidence was "barely" sufficient to support a conviction under Section 1324(a)(1)(A)(iv) where the defendant not only advised an alien about immigration law but also employed her, and the alien would not have stayed in the United States without work. *United States v. Henderson*, 857 F. Supp. 2d 191,

207-209 (D. Mass. 2012). As the government argued in its supplemental brief, the fact remains that "[n]o reported decision applies Section 1324(a)(1)(A)(iv) to efforts to persuade, expressions of moral support, or abstract advocacy regarding immigration," Gov't Supp. Br. 5, and the panel's suggestion that wide swaths of protected speech are subject to prosecution is unsupported by a review of the prosecutions that have actually taken place.

## CONCLUSION

The petition for rehearing en banc should be granted.

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

BRIAN A. BENCZKOWSKI
Assistant Attorney General

MERRY JEAN CHAN
Acting Chief, Appellate Division

MATTHEW S. MINER
Deputy Assistant Attorney General

s/ Andrew Laing
ANDREW W. LAING
Attorney
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530
(202) 353-8433
andrew.laing@usdoj.gov

14

**CERTIFICATE OF COMPLIANCE**

I certify that, pursuant to Circuit Rule 35-4 and 40-1, the attached opposition is in compliance with Fed. R. App. 32(c) and does not exceed 15 pages (excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii)).  This brief has been prepared in a proportionally spaced, 14-point typeface using Microsoft Word 2013.


s/ Andrew Laing
ANDREW W. LAING

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2019, I filed the foregoing Brief for the United States with the Clerk of the Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


s/ Andrew Laing
ANDREW W. LAING

# ADDENDUM

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | No. 15-10614 |
| v. | D.C. No. CR 10-414 RMW |
| EVELYN SINENENG-SMITH, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, Senior District Judge, Presiding

Argued and Submitted April 18, 2017
San Francisco, California
Reargued and Resubmitted February 15, 2018
Pasadena, California

Filed December 4, 2018

Before: A. Wallace Tashima, Marsha S. Berzon,
and Andrew D. Hurwitz,[*] Circuit Judges.

Opinion by Judge Tashima

---

[*] Judge Reinhardt, who was originally a member of this panel, died after this case was reargued and resubmitted for decision. Judge Hurwitz was randomly drawn to replace him. Judge Hurwitz has read the briefs, reviewed the record, and watched video recordings of the oral arguments.

## SUMMARY[**]

### Criminal Law

The panel reversed the district court's judgment with respect to the defendant's convictions on two counts of encouraging and inducing an alien to remain in the United States for the purposes of financial gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iv) & 1324(a)(1)(B)(i); vacated the defendant's sentence; and remanded for resentencing.

The panel held that subsection (iv) – which permits a felony prosecution of any person who "encourages or induces" an alien to come to, enter, or reside in the United States if the encourager knew, or recklessly disregarded the fact that such coming to, entry, or residence is or will be in violation of law – is unconstitutionally overbroad in violation of the First Amendment because it criminalizes a substantial amount of protected expression in relation to its narrow band of legitimately prohibited conduct and unprotected expression.

In a concurrently filed memorandum disposition, the panel affirmed the judgment with respect to the defendant's convictions on two counts of mail fraud in violation of 18 U.S.C. § 1341.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Daniel F. Cook (argued), Bodega Bay, California, for Defendant-Appellant.

Susan B. Gray (argued), Assistant United States Attorney; J. Douglas Wilson, Chief, Appellate Section; United States Attorney's Office, San Francisco, California; Elizabeth D. Collery (argued), Attorney, Criminal Division; John P. Cronan, Principal Deputy Assistant Attorney General; Kenneth A. Blanco, Acting Assistant Attorney General; United States Department of Justice, Washington, D.C.; for Plaintiff-Appellee.

Mark C. Fleming (argued) and Megan E. Barriger, Wilmer Cutler Pickering Hale & Dorr LLP, Boston, Massachusetts; Beth C. Neitzel, Wilmer Cutler Pickering Hale & Dorr LLP, Washington, D.C.; for Amici Curiae Immigrant Defense Project, and National Immigration Project of the National Lawyers Guild.

Annie Hudson-Price (argued) and Mark Rosenbaum, Public Counsel, Los Angeles, California, for Amicus Curiae Public Counsel.

Stephen R. Sady (argued), Chief Deputy Federal Public Defender; Lisa Ma, Research and Writing Attorney, Portland, Oregon; Carmen A. Smarandoiu, Assistant Federal Public Defender, San Francisco, California; for Amicus Curiae Federal Defender Organizations of the Ninth Circuit.

Lee Rowland (argued), Cecillia D. Wang, Anand Balakrishnan, ACLU Foundation, New York, New York; Christine Patricia Sun, American Civil Liberties Union Foundation of Northern California, Inc.; for Amici Curiae American Civil Liberties Union, and American Civil Liberties Union of Northern California.

Eugene Volokh, Scott & Cyan Banister First Amendment Clinic, UCLA School of Law, Los Angeles, California, as Amicus Curiae.

Elliott Schulder, Tina M. Thomas, Nicole Y. Roberts, Covington & Burling LLP, Washington, D.C.; Robin Wechkin, Sidley Austin LLP, Seattle, Washington; for Amicus Curiae National Association of Criminal Defense Lawyers.

Dennis J. Herrera, City Attorney; Christine Van Aken, Chief of Appellate Litigation; Yvonne T. Mere, Chief of Complex and Affirmative Litigation; Molly M. Lee and Matthew S. Lee, Deputy City Attorneys; Office of the City Attorney, San Francisco, California; for Amicus Curiae City and County of San Francisco.

Stephen W. Manning, Innovation Law Lab, Portland, Oregon; Kari Hong, Boston College Law School, Newton, Massachusetts; for Amici Curiae Oregon Interfaith Movement for Immigrant Justice, Causa Immigrant Rights Coalition of Oregon, Catholic Charities of Oregon, and Immigration Counseling Services of Oregon.

Emily T. Kuwahara, Crowell & Moring LLP, Los Angeles, California; Harry P. Cohen and Gary A. Stahl, Crowell & Moring LLP, New York, New York; Noor Taj, Crowell & Moring LLP, Washington, D.C.; Niyati Shah, John C. Yang, Asian Americans Advancing Justice | AAJC, Washington, D.C.; for Amicus Curiae Asian Americans Advancing Justice | AAJC.

---

# OPINION

TASHIMA, Circuit Judge:

## INTRODUCTION

Defendant-Appellant Evelyn Sineneng-Smith was convicted on two counts of encouraging and inducing an alien to remain in the United States for the purposes of financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) & § 1324(a)(1)(B)(i).[1] Section 1324(a)(1)(A)(iv) ("Subsection (iv)") permits a felony prosecution of any person who "encourages or induces an alien to come to, enter, or reside in the United States" if the encourager knew, or recklessly disregarded "the fact that such coming to, entry, or residence is or will be in violation of law." We must decide whether Subsection (iv) abridges constitutionally-protected speech. To answer this question, we must decide what "encourages or induces" means.

---

[1] Sineneng-Smith was also convicted of two counts of mail fraud in violation of 18 U.S.C. § 1341. We affirm those convictions in a separate, concurrently filed memorandum disposition.

The parties have widely divergent views about how to interpret the statute. Sineneng-Smith and several *amici* contend that encourage and induce carry their plain meaning and, therefore, restrict vast swaths of protected expression in violation of the First Amendment. The government counters that the statute, in context, only prohibits conduct and a narrow band of unprotected speech.

We do not think that any reasonable reading of the statute can exclude speech. To conclude otherwise, we would have to say that "encourage" does not mean encourage, and that a person cannot "induce" another with words. At the very least, it is clear that the statute potentially criminalizes the simple words – spoken to a son, a wife, a parent, a friend, a neighbor, a coworker, a student, a client – "I encourage you to stay here."

The statute thus criminalizes a substantial amount of constitutionally-protected expression. The burden on First Amendment rights is intolerable when compared to the statute's legitimate sweep. Therefore, we hold that Subsection (iv) is unconstitutionally overbroad in violation of the First Amendment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Underlying Facts

Sineneng-Smith operated an immigration consulting firm in San Jose, California. Her clients were mostly natives of the Philippines, unlawfully employed in the home health care industry in the United States, who sought authorization to work and adjustment of status to obtain legal permanent residence (green cards). Sineneng-Smith assisted clients with

applying for a "Labor Certification," and then for a green card. She signed retainer agreements with her clients that specified the purpose of the retention as "assisting [the client] to obtain permanent residence through Labor Certification." The problem was that the Labor Certification process expired on April 30, 2001; aliens who arrived in the United States after December 21, 2000, were not eligible to receive permanent residence through the program. *See Esquivel-Garcia v. Holder*, 593 F.3d 1025, 1029 n.1 (9th Cir. 2010). Sineneng-Smith knew that the program had expired. She nonetheless continued to sign retainer agreements with her clients and tell them that they could obtain green cards via Labor Certifications. And she also continued to sign new retainer agreements purportedly to assist additional clients in obtaining Labor Certification. At least two of Sineneng-Smith's clients testified that they would have left the country if Sineneng-Smith had told them that they were not eligible for permanent residence. Sineneng-Smith's words and acts which allegedly violated the statute were alleged to have occurred from 2001 to 2008.

## B. Procedural History

On July 14, 2010, a grand jury returned a ten-count superseding indictment charging Sineneng-Smith with, as relevant to this appeal, three counts of violating 8 U.S.C. § 1324(a)(1)(A)(iv) & § 1324(a)(1)(B)(i) – encouraging or inducing an alien to reside in the country, knowing and in reckless disregard of the fact that such residence is in violation of the law.

Before trial, Sineneng-Smith moved to dismiss the immigration counts of the superseding indictment. Sineneng-Smith argued that: (1) her conduct was not within the scope

of Subsection (iv); (2) Subsection (iv) is impermissibly vague under the Fifth Amendment; and (3) Subsection (iv) violates the First Amendment because it is a content-based restriction on her speech.   The district court denied the motion to dismiss, but did not explicitly address the First Amendment argument.

After a twelve-day trial, the jury found Sineneng-Smith guilty on all three counts of violating Subsection (iv) and § 1324(a)(1)(B)(i), and all three counts of mail fraud. Sineneng-Smith then moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c), renewing the arguments from her motion to dismiss and contending that the evidence elicited at trial did not support the verdicts.   The district court concluded that sufficient evidence supported the convictions for two of the three § 1324 counts and two of the three mail fraud counts.[2]

Sineneng-Smith timely appealed, again arguing that the charges against her should have been dismissed for the reasons asserted in her motion to dismiss, and that the evidence did not support the convictions.   We first held oral argument on April 18, 2017, and submitted the case for decision.  Subsequent to submission, however, we determined that our decision would be significantly aided by further briefing.  On September 18, 2017, we filed an order inviting interested *amici* to file briefs on the following issues:

---

[2] The court sentenced Sineneng-Smith to 18 months on each of the remaining counts, to be served concurrently; three years of supervised release on the § 1324 and mail fraud counts, and one year of supervised release on the filing of false tax returns count, all to run concurrently.  She was also ordered to pay $43,550 in restitution, a $15,000 fine, and a $600 special assessment.

1.  Whether the statute of conviction is overbroad or likely overbroad under the First Amendment, and if so, whether any permissible limiting construction would cure the First Amendment problem?

2.  Whether the statute of conviction is void for vagueness or likely void for vagueness, either under the First Amendment or the Fifth Amendment, and if so, whether any permissible limiting construction would cure the constitutional vagueness problem?

3.  Whether the statute of conviction contains an implicit mens rea element which the Court should enunciate. If so: (a) what should that mens rea element be; and (b) would such a mens rea element cure any serious constitutional problems the Court might determine existed?

We received nine *amicus* briefs,[3] as well as supplemental briefs from both Sineneng-Smith and the government. On February 15, 2018, we again held oral argument and resubmitted the case for decision.

## STANDARD OF REVIEW

The government urges us to review Sineneng-Smith's First Amendment overbreadth claim for plain error, arguing that she waived the issue by not raising it until we requested supplemental briefing.

Although Sineneng-Smith never specifically argued overbreadth before our request for supplemental briefing, she

---

[3] We thank all *amici* for their helpful briefs and oral advocacy.

has consistently maintained that a conviction under the statute would violate the First Amendment. Sineneng-Smith's motion to dismiss argued that "[t]he crime alleged here is rooted in speech *content* – performing immigration consultancy work on behalf of aliens and their employers by petitioning the government on their behalf – not in conduct lacking any First Amendment protection." Likewise, her opening brief on appeal reasserted a First Amendment challenge: "Such communication is 'pure' speech entitled to the highest level of protection."

"Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). Because Sineneng-Smith has asserted a First Amendment claim throughout the litigation, her overbreadth challenge "is – at most – a new argument to support what has been a consistent claim." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010) (internal quotation marks omitted). We thus conclude that she preserved her overbreadth argument, and review it de novo.

## ANALYSIS

The First Amendment dictates that "Congress shall make no law . . . abridging the freedom of speech." "[A] law imposing criminal penalties on protected speech is a stark example of speech suppression." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002).

Of course, like most constitutional principles, the right to free speech "is not absolute." *Ashcroft* v. *Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002). For example, laws or

policies that target conduct but only incidentally burden speech may be valid. *See, e.g.*, *Virginia v. Hicks*, 539 U.S. 113, 122–23 (2003). Further, traditional narrow carve-outs to the First Amendment, "long familiar to the bar," allow Congress to restrict certain types of speech "including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (internal quotation marks and citations omitted).

Sineneng-Smith and several *amici* argue that the statute explicitly criminalizes speech through its use of the term "encourages or induces," and that the speech restriction is content-based and viewpoint-discriminatory, because it criminalizes only speech *in support* of aliens coming to or remaining in the country. Alternatively, Sineneng-Smith asserts that even if the statute targets some conduct, it sweeps in too much protected speech and is therefore unconstitutionally overbroad. The government counters that Subsection (iv) should be read as referring only to conduct and, to the extent it affects speech, restricts only unprotected speech.

We address those competing constructions below, beginning with the topic of overbreadth.[4]

---

[4] We follow the Supreme Court's lead in assessing the statute's overbreadth before engaging in the strict scrutiny analysis that would follow if we concluded that Subsection (iv) was a content-based restriction on speech. *See Stevens*, 559 U.S. at 474 (recognizing that the statute at issue explicitly regulated expression based on content, but analyzing the statute for overbreadth rather than for whether it survived strict scrutiny).

## I.  First Amendment Overbreadth

Because of the "sensitive nature of protected expression," *New York v. Ferber*, 458 U.S. 747, 768 (1982), "[t]he Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere," *Free Speech Coal.*, 535 U.S. at 244.  To implement this protection, the general rules governing facial attacks on statutes are relaxed under the First Amendment. Typically, to succeed on a facial attack, a challenger would need "to establish that no set of circumstances exists under which [the statute] would be valid, or that the statute lacks any plainly legitimate sweep." *Stevens*, 559 U.S. at 472 (internal quotation marks and citations omitted).

However, "[i]n the First Amendment context . . . a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Id.* at 473 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449, n. 6 (2008)).  This exception to the typical rule is based on the idea that speakers may be chilled from expressing themselves if overbroad criminal laws are on the books.  *See Farber*, 458 U.S. at 768–69 (citing *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634 (1980)).  To combat that chilling effect, even a person whose activity is clearly not protected may challenge a law as overbroad under the First Amendment.  *See id.*

To determine whether Subsection (iv) is overbroad, we must first construe the statute.  Next, we must ask whether Subsection (iv), as construed, restricts speech and, if so, whether that speech is protected.  Finally, we must weigh the

amount of protected speech that the statute restricts against the statute's legitimate sweep.

Recognizing that striking down a statute as overbroad is "strong medicine," and the justification for facially striking down a statute "attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct," we conclude that the chilling effect of Subsection (iv) is both real and substantial. *Broadrick v. Oklahoma*, 413 U.S. 601, 615–16 (1973). The only reasonable construction of Subsection (iv) restricts a substantial amount of protected speech in relation to the narrow band of conduct and unprotected expression that the statute legitimately prohibits. Therefore, we hold that Subsection (iv) is facially invalid.

## A.  Construing the Statute

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Williams*, 553 U.S. 285, 293 (2008). Subsection (iv) reads:  "Any person who . . . encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law . . . shall be punished as provided in subparagraph (B)."[5]

---

[5] The government argues that the "statute of conviction is not 8 U.S.C. § 1324(a)(1)(A)(iv), standing alone.  Rather, the indictment charged and the jury found that Sineneng-Smith acted 'for the purpose of commercial advantage or private financial gain' under 8 U.S.C. § 1324(a)(1)(B)(i) . . . .  Accordingly, the 'statute[s] of conviction' are 8 U.S.C. § 1324(a)(1)(A)(iv) and (B)(i)."  Subsection (B)(i) is a commercial enhancement of Subsection (A)(iv). For the purposes of our

Construing the statute also requires us to look beyond the plain text of Subsection (iv). *See Stevens*, 559 U.S. at 474. Thus, to interpret Subsection (iv), we analyze: the *mens rea* required for conviction; what "encourages or induces" means; whether "an alien" limits the scope of the statute; and whether "in violation of law" refers to both criminal and civil laws.

The government contends that a defendant runs afoul of Subsection (iv) only when she (1) knowingly undertakes, (2) a non-*de-minimis*, (3) act that, (4) could assist, (5) a specific alien (6) in violating, (7) civil or criminal immigration laws.

While we endeavor to "construe[] [a statute] to avoid serious constitutional doubts," we can only do so if the statute is "readily susceptible to such a construction." *Stevens*, 559 U.S. at 481 (internal quotation marks and citations omitted). "We will not rewrite a law to conform it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain, and sharply diminish Congress' incentive to draft a narrowly tailored law in the first place." *Id.* (internal quotation marks and citations omitted).

The government's interpretation of Subsection (iv) rewrites the statute. For the following reasons, we hold that to violate Subsection (iv), a defendant must knowingly encourage or induce a particular alien – or group of aliens –

---

overbreadth analysis, the commercial enhancement is irrelevant. Subsection (A)(iv) is the predicate criminal act; without the encouraging or inducing, Sineneng-Smith could not have been convicted. And, as the meaning of § 1324(a)(1)(A)(iv) does not vary depending upon whether the financial gain enhancement also applies, the chilling effect of the "encourage or induce" statute extends to anyone who engages in behavior covered by it, whether for financial gain or not.

to come to, enter, or reside in the country in reckless disregard of whether doing so would constitute a violation of the criminal or civil immigration laws on the part of the alien. As properly construed, "encourage or induce" can mean speech, or conduct, or both, and there is no substantiality or causation requirement.

### *1.* **Mens Rea**

We first address what *mens rea* is required to sustain a conviction under Subsection (iv). As an initial matter, the most natural reading of Subsection (iv) requires us to break it into two prongs for the purposes of determining the requisite *mens rea*: first, the "encourage or induce" prong; and, second, the violation of law prong. Subsection (iv) is silent about the *mens rea* required for the encourage prong, but explicitly provides that a defendant must "know[] or reckless[ly] disregard" the fact that an alien's "coming to, entry, or residence is or will be in violation of law." 8 U.S.C. § 1324(a)(1)(A)(iv).

### *a.* Mens Rea *for "encourage or induce" Prong*

In *United States v. Yoshida*, the defendant was indicted for "knowingly encouraging and inducing" three aliens to enter the United States. 303 F.3d 1145, 1149 (9th Cir. 2002). On appeal, Yoshida argued that "there [was] insufficient evidence that she . . . knowingly encouraged or induced in some way [the aliens'] presence in the United States." *Id.* at 1149–50. In affirming the conviction, we concluded that "[a] number of events revealed at trial creates a series of inescapable inferences leading to the rational conclusion that Yoshida knowingly 'encouraged and induced' [the aliens] to enter the United States." *Id.* at 1150. We repeatedly

emphasized the knowledge requirement. *See id.* ("The government also offered circumstantial evidence that Yoshida knowingly encouraged [the aliens] to enter the United States"); *id.* at 1151 ("a reasonable jury could easily conclude that Yoshida knowingly led the aliens to the flight"). Therefore, we think it clear that Subsection (iv) has a knowledge *mens rea* for the encourage prong.

### b.   Mens Rea *for the Violation of Law Prong*

Despite the fact that Subsection (iv) explicitly states that a defendant must "know[] or reckless[ly] disregard" the fact that an alien's "coming to, entry, or residence is or will be in violation of law," the government argues that we have increased that *mens rea* requirement to an "intent" to violate the immigration laws. We disagree, but recognize that our prior cases provide some support for the government's position.

The government's argument is based on *United States v. Nguyen*, 73 F.3d 887 (9th Cir. 1995), in which we reviewed a conviction under subsection (i) of §   1324(a)(1)(A). Subsection (i) criminalizes "bring[ing]" an alien "to the United States . . . at a place other than a designated port of entry" when the defendant "know[s] that [such] person is an alien." 8 U.S.C. § 1324(a)(1)(A)(i). "Read literally, then, the statute criminalizes bringing, purposefully or otherwise, any alien, illegal or otherwise, into the country other than at a designated port of entry." *Nguyen*, 73 F.3d at 890. In the absence of an explicit *mens rea* standard, we considered the legislative history of the statute and concluded that Congress did not intend to "dispense with a *mens rea* requirement for the felony offense." *Id.* at 893. "Accordingly, we [held] that to convict a person of violating [§] 1324(a)(1)(A), the

government must show that the defendant acted with criminal intent."[6]  *Id.*

Subsequent cases adding a *mens rea* element to the other subsections of § 1324(a)(1)(A) adopted *Nguyen*'s criminal intent language.  *See United States v. Barajas-Montiel*, 185 F.3d 947, 951–53 (9th Cir. 1999).  Central to the government's argument, in *Yoshida* we stated, "[w]e have held that 'to convict a person of violating section 1324(a)(1)(A), the government must show that the defendant acted with criminal intent, i.e., the intent to violate United States immigration laws.'"  *Yoshida*, 303 F.3d at 1149 (quoting *Barajas-Montiel*, 185 F.3d at 951).

However, the passing reference to "criminal intent" in *Yoshida* did not increase the *mens rea* of the violation of law prong to intent.  We affirmed Yoshida's conviction because "the jury had ample evidence before it to conclude, beyond a reasonable doubt, that Yoshida encouraged the aliens to enter the United States, with *knowledge or in reckless disregard of the fact that the aliens' entry was in violation of law*."  *Id.* at 1151 (emphasis added).  Not only does *Yoshida* foreclose the government's argument that we have increased the *mens rea* level of Subsection (iv), it confirms that we have not read out of the statute the "reckless disregard" standard that appears explicitly in it.

---

[6] "Criminal intent" is an amorphous term that can signify different levels of culpability.  For example, Black's Law Dictionary defines the term as "mens rea," or "[a]n intent to commit an actus reus without any justification, excuse, or other defense."  *Intent*, *Black's Law Dictionary*, 930–31 (10th ed. 2014).  However, Black's also recognizes that sometimes "criminal intent" means "an intent to violate the law, — implying a knowledge of the law violated."  *Id.* (citations omitted).

### 2. *"Encourages or Induces"*

#### a. *Our Construction of "encourage or induce"*

Next, we turn to the meaning of "encourage or induce." As always, we begin with the language of the statute to determine whether it has "a plain and unambiguous meaning with regard to the particular dispute in the case." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). A critical dispute in this case is whether, and to what extent, the words "encourage and induce" criminalize protected speech.

We have previously recognized that "encourage" means "to inspire with courage, spirit, or hope . . . to spur on . . . to give help or patronage to." *United States v. Thum*, 749 F.3d 1143, 1147 (9th Cir. 2014) (alterations in original) (quoting *United States v. He*, 245 F.3d 954, 960 (7th Cir. 2001) (quoting Merriam Webster's Collegiate Dictionary 381 (10th ed. 1996))). This definition is well-accepted. *See, e.g.*, *Encourage*, *Oxford English Dictionary Online* (3d ed. 2018) ("to inspire with courage, animate, inspirit . . . . [t]o incite, induce, instigate"). Similarly, induce means "[t]o lead (a person), by persuasion or some influence or motive that acts upon the will . . . to lead on, move, influence, prevail upon (any one) to do something." *Induce*, *Oxford English Dictionary Online* (3d ed. 2018).

In isolation, "encourage or induce" can encompass both speech and conduct. It is indisputable that one can encourage or induce with words, or deeds, or both. The dictionary definitions do not, however, necessarily resolve the dispute in this case. We must also examine the context in which the words are used to determine whether we can avoid First

Amendment concerns.  *See Williams*, 553 U.S. at 294–95.
We look to the principle of *noscitur a sociis* to determine
whether the language surrounding "encourage or induce"
provides those words with a more precise definition.  *Id.* at
294.

In *Williams*, the Supreme Court analyzed whether
18 U.S.C. § 2252A(a)(3)(B)'s prohibition on "advertis[ing],
promot[ing], present[ing], distribut[ing], or solicit[ing]"
purported child pornography was overbroad.  *Id.* at 293–94.
In construing the statute, the Court narrowed the meanings of
"promotes" and "presents" in light of their neighboring verbs.
*Id.* at 294.     The Court reasoned that "advertises,"
"distributes," and "solicits" all had an obvious transactional
connotation:  "Advertising, distributing, and soliciting are
steps taken in the course of an actual or proposed transfer of
a product."  *Id.*  "Promotes" and "presents," on the other
hand, are not obviously transactional.  In context, however,
the Supreme Court read them as having a transactional
meaning as well.  *Id.* at 294–95.  Thus, the Court interpreted
"promotes" to mean "recommending purported child
pornography to another person for his acquisition," and
"presents" to "mean[] showing or offering the child
pornography to another person with a view to his
acquisition."  *Id.* at 295.

By contrast, Subsection (iv) does not have a string of five
verbs – it is limited to only two:  "encourages or induces."
Here, the proximity of encourage and induce to one another
does not aid our analysis.   As discussed above, both
encourage and induce can be applied to speech, conduct, or
both.   Therefore, unlike the string of verbs in *Williams*,
neither of these verbs has clear non-speech meanings that
would inform and limit the other's meaning.  In other words,

when read together, they do not provide a more precise definition or one that excludes speech.  Nor are the words necessarily transactional like those in *Williams*.  Thus, the application of *noscitur a sociis* to the two operative verbs here, does not narrow our search; our conclusion that Subsection (iv) could cover speech, as well as conduct, remains.

Beyond their immediate neighbors in Subsection (iv), encourage and induce also "keep company" with the verbs in the other subsections of § 1324(a)(1)(A).  The neighboring subsections prohibit:  (i) "bring[ing]" an alien to the United States "at a place other than a designated port of entry;" (ii) "transport[ing] or mov[ing]" an alien in furtherance of a violation of the immigration laws; and (iii) "conceal[ing], harbor[ing], or shield[ing] from detection" an alien in the country in violation of the immigration laws.  8 U.S.C. § 1324(a)(1)(A)(i), (ii), & (iii).  Bringing, transporting, moving, concealing, harboring, and shielding all clearly refer to some type of action.

The government contends, in light of these other verbs in the other subsections, that "encourage or induce" "should likewise be interpreted to require specific actions that facilitate an alien's coming to, entering, or residing in the United States illegally.  So understood, § 1324(a)(1)(A)[(iv)] serves as a 'catch-all' provision that covers actions other than 'bringing,' 'transporting,' etc., that might facilitate illegal immigration."  (Citation omitted.)  Conversely, *Amicus* American Civil Liberties Union contends that subsections (i)–(iii) criminalize so much conduct that the only thing left to criminalize in Subsection (iv) is pure speech.

The government's proposed interpretation of "encourage or induce" in the context of §1324(a)(1)(A) is strained. While we agree that the statute is intended to restrict the facilitation of illegal immigration and that subsections (i)–(iii) prohibit specific actions, it does not follow that Subsection (iv) covers only actions. Instead, the structure of the section lends itself to the more obvious conclusion that the verbs in the subsections must mean different things because they form the basis of separate charges. *See Thum*, 749 F.3d at 1146–47.

In § 1324, "Congress created several discrete immigration offenses including," among others, the crimes outlined in subsections (a)(1)(A)(i)–(iv). *United States v. Lopez*, 484 F.3d 1186, 1190–91, 1193–94 (9th Cir. 2007) (en banc); *see Thum*, 749 F.3d at 1146. We have held that construing § 1324(a)(1)(A) "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant," requires Subsection (iv) to be read as excluding the conduct criminalized in the remaining subsections. *Thum*, 749 F.3d at 1147 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)). If encouraging or inducing cannot mean bringing, transporting, moving, concealing, harboring, or shielding, what is left?

The government offers a few limited examples of other actions that could potentially be covered under Subsection (iv), but not reached by subsections (i)–(iii). These examples include: (1) providing aliens with false documents; (2) selling a border-crossing kit to aliens, including a map of "safe crossing" points and backpacks filled with equipment designed to evade border patrol; (3) duping foreign tourists into purchasing a fake "visa extension;" or (4) providing a "package deal" to foreign pregnant women who wish to give

birth in the United States that includes a year of room and board, a six-month tourist visa, and instructions on how to overstay the visa without detection.  But we doubt Congress intended to limit Subsection (iv) to actions such as these, as the provision does not appear necessary to prosecute any of these actions.  Subsection (i), (iii), and (v)(II), which, respectively, restrict bringing, shielding from detection, and aiding and abetting the commission of any of these acts, cover the examples raised by the government.  Additionally, 8 U.S.C. § 1324c and 18 U.S.C. § 1546 provide broad criminal prohibitions against document fraud in violation of the immigration laws.  These few, unpersuasive examples therefore do not convince us that "encourage" and "induce" can be read so as not to encompass speech, even though their plain meaning dictates otherwise.

In sum, the structure of the statute, and the other verbs in the separate subsections, do not convince us to stray from the plain meaning of encourage and induce – that they can mean speech, or conduct, or both.  Although the "encourage or induce" prong in Subsection (iv) may capture some conduct, there is no way to get around the fact that the terms also plainly refer to First Amendment-protected expression.  In fact, in *Williams*, one of the seminal overbreadth cases, Justice Scalia used the statement, "I encourage you to obtain child pornography" as an example of protected speech.  553 U.S. at 300.  We see no reason why "I encourage you to overstay your visa" would be any different.  And interpreting "encourage or induce" to exclude such a statement would require us to conclude that "encourage" does not mean encourage.  The subsection is not susceptible to that construction.  Subsection (iv), therefore, criminalizes encouraging statements like Justice Scalia's example and other similar expression.

>   b.  *Other Courts' Construction of "encourage or induce"*

Only one other Circuit has considered a First Amendment overbreadth challenge to Subsection (iv), and that was in an unpublished disposition.  In *United States v. Tracy*, the defendant "pled guilty to one count of conspiring to encourage non-citizens to enter the United States illegally . . . but reserved the right to appeal the district court's denial of his motion to dismiss that charge."  456 F. App'x 267, 268 (4th Cir. 2011) (per curiam).  The Fourth Circuit rejected the defendant's argument "that speech that encourages illegal aliens to come to the United States is protected by the First Amendment in certain instances."  *Id.* at 272.  Instead, the court stated "that speech that constitutes criminal aiding and abetting does not enjoy the protection of the First Amendment," and concluded that the statute did not prohibit a substantial amount of protected speech.  *Id.* (alteration and citations omitted).  We will address the extent to which Subsection (iv) can be read to prohibit only aiding and abetting in more detail below, but it is clear that *Tracy* recognized that the subsection reaches some speech.  *Id.* ("[T]here may be some instances in which we might find that the statute chills protected speech.").

Although not addressing Subsection (iv) from a First Amendment perspective, other courts have interpreted what "encourage or induce" means in the subsection.  Somewhat recently, we touched upon the issue in *Thum*.  *Amici* put quite a bit of stock in our use of a "broad" definition of "encourage" in *Thum*, but we agree with the government that *Thum* is inconclusive about whether "encourage" (or "induce") includes speech.

In *Thum*, we considered whether the defendant encouraged or induced an alien to reside in the United States when the defendant escorted an alien from a fast food restaurant near the San Ysidro Port of Entry – on the U.S. side of the border – to a nearby vehicle headed north. 749 F.3d at 1144–45. In interpreting "encourage," we relied on the general dictionary definition. *Id.* at 1147. We also recognized that we "ha[d] previously equated 'encouraged' with 'helped.'" *Id.* (citing *Yoshida*, 303 F.3d at 1150). But the main question in that case was whether the defendant had done enough to encourage the alien to reside in the U.S. *Thum*, 749 F.3d at 1147. On that point, we agreed with the defendant that escorting an alien to a van bound for Northern California was at most "aid[ing] in the attempted *transportation* of the alien, which would be covered under 8 U.S.C. § 1324(a)(1)(A)(ii)," and did not "convince the illegal alien to stay in this country . . . or . . . facilitate the alien's ability to live in this country indefinitely." *Id.* at 1148 (internal quotation marks and citations omitted). *Thum* thus stands for the proposition that "[e]ncouraging an illegal alien to reside in the United States must mean something more than merely transporting such an alien within this country." *Id.* at 1149.[7] We did not address whether the statute reached speech.

Many other courts have concluded that encourage can mean "to help." *See United States v. Lopez*, 590 F.3d 1238, 1249–52 (11th Cir. 2009) (upholding a supplemental jury

---

[7] Likewise, *Yoshida* does not aid our analysis. *Yoshida*, examining whether there was sufficient evidence to sustain the defendant's conviction under Subsection (iv), held only that escorting aliens through an airport to a United States-bound flight constituted encouragement. *Yoshida*, 303 F.3d at 1150–51.

instruction which, in part, defined "encourage" as "to help"); *United States v. Fujii*, 301 F.3d 535, 540 (7th Cir. 2002); *He*, 245 F.3d at 957–58; *United States v. Oloyede*, 982 F.2d 133, 135–37 (4th Cir. 1993) (per curiam).  However, as mentioned above, none of these cases considered a First Amendment challenge to Subsection (iv), nor do they foreclose the conclusion that "encourage or induce" can mean speech.  To "help" is not a helpful limitation in terms of excluding expression, because speech can *help* someone decide to enter or to reside in the United States.

Additionally, the government cites out-of-circuit cases for the argument that encouraging or inducing "requires substantial assistance (or offers of assistance) that the defendant expects to make an alien lacking lawful immigration status more likely to enter or remain in the United States than she otherwise would have been."  For example, in *DelRio-Mocci v. Connolly Props. Inc.*, the Third Circuit

> read subsection (iv) as prohibiting a person from engaging in an *affirmative act that substantially encourages or induces* an alien lacking lawful immigration status to come to, enter, or reside in the United States where the undocumented person otherwise might not have done so. Thus, subsection (iv) has the distinct character of foreclosing the type of substantial assistance that will spur a person to commit a violation of immigration law where they otherwise might not have.

672 F.3d 241, 249 (3d Cir. 2012) (emphasis added).  The court reasoned that if it interpreted "encourage or induce" too

broadly it would "render subsections (i)–(iii)] redundant or superfluous." *Id.* The court thus read the following elements into what constituted encouragement under Subsection (iv): it must be (1) an affirmative act that (2) substantially encourages (3) an alien lacking lawful immigration status to (4) come to, enter, or reside in the United States where (5) the undocumented person otherwise might not have done so. *Id.* At least one other court has adopted the Third Circuit's interpretation. *See United States v. Henderson*, 857 F. Supp. 2d 191, 204–08 (D. Mass. 2012).

There is a lot to unpack in this interpretation of the statute, but at bottom, *DelRio-Mocci* added an act requirement, a substantiality requirement, and a causation requirement to the text of Subsection (iv). The Third Circuit adopted the substantiality requirement from its "harboring" decisions under § 1324(a)(1)(A)(iii), which hold that a defendant can only be convicted where his "conduct tend[s] to substantially facilitate an alien's remaining in the United States illegally and to prevent government authorities from detecting the alien's unlawful presence." *Id.* at 246–48 (quoting *United States v. Ozcelik*, 527 F.3d 88, 97 (3d Cir. 2008) (internal quotation marks omitted)). The Ninth Circuit, however, does not have such a precedent and we do not think the statute is reasonably susceptible to this interpretation in the absence of statutory text to that effect. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1017 n.9 (9th Cir. 2013) (recognizing that the Ninth Circuit broadly defines harboring "to mean 'afford shelter to'") (quoting *United States v. Acosta de Evans*, 531 F.2d 428, 430 (9th Cir. 1976)). We therefore reject the government's proposed interpretation that "encourage or induce" must mean an act that provides substantial assistance (or non-*de-minimis* help) to an alien for entering or remaining in the country.

We also disagree with the Third Circuit that a causation requirement can be read into the statute. On its face "the plain language of the statute makes clear that the relevant inquiry is the conduct of the defendant," and not the alien. *See United States v. Dhingra*, 371 F.3d 557, 561 (9th Cir. 2004) (rejecting vagueness and overbreadth challenges to 18 U.S.C. § 2422(b), which prohibits "knowingly persuad[ing], induc[ing], entic[ing], or coerc[ing] any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense").

One district court's struggle to interpret Subsection (iv) illustrates our concerns. In *Henderson*, defendant was convicted pursuant to Subsection (iv) because she had "employed a person she came to learn was an illegal alien to clean her home from time to time and, when asked, advised the cleaning lady generally about immigration law practices and consequences." 857 F. Supp. 2d at 193. Considering a post-verdict motion for judgment of acquittal, the district court reviewed the "Developing Appellate Case Law" to determine the scope of Subsection (iv), and adopted the Third Circuit's test from *DelRio-Mocci*. *Id.* at 204, 208.

In arguing against the motion, the government took "the position that giving illegal aliens advice to remain in the United States while their status is disputed constitutes felonious conduct under § 1324(a)(1)(A)(iv) because it constitutes encouragement or inducement under the statute."**[8]** Doubling down, "the government contended that an immigration lawyer would be prosecutable for the federal

---

**[8]** The defendant in *Henderson* does not appear to have made an explicit First Amendment argument.

felony created by § 1324(a)(1)(A)(iv) if he advised an illegal alien client to remain in the country because, if the alien were to leave, the alien could not return to seek adjustment of status." *Id.* at 203.

The district court expressed discomfort with the government's position and incredulity that the government would continue to pursue the felony prosecution. *See id.* at 193–94, 211–14. However, applying the *DelRio-Mocci* test, the district court concluded that "a jury could find that [defendant's] employment together with her [immigration] advice could have caused [the alien], or a person in her position, to reside here when she otherwise might not have." *Id.* at 208. The court denied the motion for acquittal, but granted defendant's motion for a new trial in order to give new jury instructions. *Id.* at 210, 214.

Despite *Henderson*, the government now argues that "[n]o reported decision applies Subsection (iv) to efforts to persuade, expressions of moral support, or abstract advocacy regarding immigration." Even if this were correct, it misses the point. "[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." *Stevens*, 559 U.S at 480. Thus, the absence of convictions based purely on protectable expression is not evidence that the statute does not criminalize speech. Just because the government has not (yet) sought many prosecutions based on speech, it does not follow that the government cannot or will not use an overbroad law to obtain such convictions. Further, the lack of convictions says nothing about whether Subsection (iv) chills speech. Indeed, *Henderson* exemplifies why we cannot take the government's

word for how it will enforce a broadly written statute, and suggests that any would-be speaker who has thought twice about expressing her views on immigration was not being paranoid.

### 3.   *"An alien"*

The government contends that Subsection (iv) is limited to encouraging "a particular alien or aliens," rather than "the general public." For the purposes of this appeal, and to avoid serious constitutional concerns, we think the government's proposed interpretation is reasonable, but not ultimately dispositive to our overbreadth analysis. And while it is easy to foresee arguments about what constitutes a group of particular aliens versus the "general public," we accept that Subsection (iv) requires a defendant to direct his or her encouragement or inducement toward some known audience of undocumented individuals.

### 4.   *"In Violation of Law"*

Recognizing the breadth of the statute, the government admits that "in violation of law" refers not only to criminal law, but also to civil violations of the immigration laws. We agree. *Amicus* Professor Eugene Volokh argues that we could narrow the scope of the statute by reading "violation of law" to mean only violations of the criminal law. But, because simple residence in the United States without legal status is not a crime, and the statute reaches inducing or encouraging an alien to "reside" in the United States, the subsection is not susceptible to this limiting construction. *See Arizona v. United States*, 567 U.S. 387, 407 (2012) ("As a general rule, it is not a crime for a removable alien to remain present in the

United States.").  The proposed limiting construction would render "reside" superfluous.

### 5.  *Construction of the Statute*

To recap, we interpret Subsection (iv) as follows:  to violate the subsection, a defendant must knowingly encourage or induce a particular alien – or group of aliens – to come to, enter, or reside in the country, knowing or in reckless disregard of whether doing so would constitute a violation of the criminal or civil immigration laws.  As construed, "encourage or induce" can mean speech, or conduct, or both, and there is no substantiality or causation requirement.

Ultimately, the government asks us to rewrite the statute.  Under no reasonable reading are the words "encourage" and "induce" limited to conduct.  We think the statute is only susceptible to a construction that affects speech.  As an illustration – under the government's reading of the statute, it would argue that a mother telling an undocumented adult child "If you leave the United States, I will be very lonely.  I encourage you to stay and reside in the country" would not subject the mother to prosecution.  But, in this example, the mother is merely repeating the words of the statute in an attempt to get her child to stay.  We think any reasonable person reading the subsection would assume that the mother's statement makes her vulnerable to prosecution, that the words of the statute have their plain meaning, and that a person can encourage or induce another by verbally, explicitly encouraging or inducing her.

## B.  Subsection (iv) Restricts Protected Speech

The conclusion that Subsection (iv) reaches speech does not end our inquiry.  We must now examine:  (1) whether the statute reaches protected speech and, if so, (2) whether the statute restricts a substantial amount of such speech in relation to the statute's legitimate sweep.  *See, e.g.*, *Hicks*, 539 U.S. at 118–19.

Not all speech is protected under the First Amendment. Congress is allowed to restrict certain types of speech, including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct.  *See Steven*s, 559 U.S. at 468.  The most relevant exception to the First Amendment for this case is speech integral to criminal conduct, but incitement also deserves mention.

The government asserts that even if we interpret Subsection (iv) to reach speech, it does not constrain protected speech because the speech is integral to assisting others in violating the immigration laws.  In the government's reading, Subsection (iv) is analogous to an aiding and abetting statute.  But, to repeat, continuing to reside in the U.S. is not a criminal offense; therefore, assisting one to continue to reside here cannot be aiding and abetting a crime. One *amicus*, supporting the constitutionality of the statute, reads it as a solicitation restriction.[9]

---

[9] *Amicus* Professor Eugene Volokh proposes construing the statute to restrict a defendant from "directly, specifically, and purposefully encouraging" criminal violations of the immigration laws.  We do not think that the statute is reasonably susceptible to this interpretation.  First, we decline to read a specificity or directness requirement into the statute because the plain meanings of encourage and induce do not include such principles.  Second, Congress clearly knows how to write a solicitation

### 1. Incitement

Under the incitement exception to the First Amendment, the government may not "proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). "Abstract advocacy," even of a crime, on the other hand, is protected speech. *See Williams*, 553 U.S. at 298–99. As we have construed Subsection (iv), it does not require that an alien imminently violate the immigration law. Nor does Subsection (iv) require that any encouragement or inducement make it "likely" that an alien will violate the immigration law. Plainly, the incitement doctrine is a poor fit for this particular statute, especially considering that other incitement cases typically involve incitements to violence, riot, or breach of the peace. *See, e.g.*, *Brandenburg*, 395 U.S. at 447–48; *see also Hess v. Indiana*, 414 U.S. 105, 109 (1973); *United States v. Poocha*, 259 F.3d 1077, 1080-81 (9th Cir. 2001); *id.* at 1084–85 (Tashima, J., concurring in part and dissenting in part) (agreeing that speech must be likely to incite violence to be proscribed). If Subsection (iv) reaches any speech that is exempted from the First Amendment as incitement, it is an extremely narrow band of speech and does not significantly reduce the scope of the statute.

---

statute as evidenced by 18 U.S.C. § 373(a): "Whoever . . . solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in" a violent felony is subject to prosecution. If Congress wanted Subsection (iv) to restrict only solicitation, it could have done so. Finally, as discussed above, we cannot limit "in violation of law" to criminal laws and, like Professor Volokh, we are not aware of any precedent for treating speech soliciting merely civil violations as a crime.

## 2. Speech Integral to Criminal Conduct

The government's primary argument is that any covered speech is "integral" to a violation of the immigration law. "[S]peech or writing used as an integral part of conduct in violation of a valid criminal statute" does not enjoy First Amendment protection. *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949); *id.* at 498–502 (picketing for "the sole immediate purpose" of compelling a company to stop selling to nonunion peddlers was not protected speech because it was part of "a single and integrated course of conduct" in violation of criminal restraint of trade laws). For this reason, speech that aids and abets criminal activity does not necessarily benefit from First Amendment protection. *United States v. Freeman*, 761 F.2d 549, 552 (9th Cir. 1985).

In *Freeman*, we reviewed "convict[ions] on fourteen counts of aiding and abetting and counseling violations of the tax laws, an offense under 26 U.S.C. § 7206(2)." *Id.* at 551. We held that the defendant was entitled to a jury instruction on a First Amendment defense as to twelve of the counts because, at least arguably, the defendant made statements about the "unfairness of the tax laws generally." *Id.* at 551–52. Conversely, the defendant was not entitled to the First Amendment instruction on the remaining two counts because the defendant actually assisted in the preparation of false tax returns. *Id.* at 552. We reasoned that "[e]ven if the convictions on these [two] counts rested on spoken words alone, the false filing was so proximately tied to the speech that no First Amendment defense was established." *Id.* As *Freeman* illustrates, although some speech that aids or abets a crime is so integral to the crime itself that it is not constitutionally protected, other speech related to criminal activity is not so integral as to be unprotected.

Based on *Freeman*, the government contends that any speech that Subsection (iv) reaches is integral to a violation of the immigration laws.**[10]** However, there are relevant differences between an aiding and abetting statute and Subsection (iv). For one, as explained above, the statute is not limited only to speech that substantially assists an alien in violating the immigration laws. *Freeman* exposes the relevant distinction. The statute in *Freeman* prohibited "[w]illfully aid[ing] or assist[ing] in, or procur[ing], counsel[ing], or advis[ing] the preparation or presentation" of false tax returns. 26 U.S.C. § 7206(2). On the twelve counts for which the court reversed Freeman's convictions, the court focused on the fact that Freeman may have generally advocated the filing of false returns. *Id.* at 551–52. On the other hand, for the two convictions that the court affirmed, it emphasized that Freeman "not only counseled but also *assisted* in the filing of false returns." *Id.* at 552 (emphasis added). The assistance on the two affirmed counts, even if only words, was more directly related to the completed crime. *Id.* Thus, *Freeman*'s conclusion is that only some speech that the statute restricted was so related to the predicate crime that it was considered "integral."**[11]** Likewise, here, the statute

---

**[10]** The government cites *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376 (1973), but the holding in that case relies on the since-weakened distinction between commercial and non-commercial speech. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562 (1980). More fundamentally, the defendant in *Pittsburgh Press* violated an ordinance that made it unlawful "to aid" in employment discrimination. 413 U.S. at 389. "Encourage" and "induce" are broader than "aid," and sweep in protected speech.

**[11]** *Freeman* was an as-applied First Amendment challenge to the false tax returns statute. We note that the string of verbs in the statute involved

criminalizes speech beyond that which is integral to violations of the immigration laws.

Second, as the government recognizes, aiding and abetting convictions require the government to prove certain elements that are not present in Subsection (iv):

> In this circuit, the elements necessary for an aiding and abetting conviction are: (1) that the accused had the specific intent to facilitate the commission of a crime by another, (2) that the accused had the requisite intent of the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that someone committed the underlying substantive offense.

*Thum*, 749 F.3d at 1148–49 (quoting *United States v. Shorty*, 741 F.3d 961, 969–70 (9th Cir. 2013)). The first obvious difference is that aiding and abetting requires the commission of a crime by another, but Subsection (iv) applies to both criminal and civil violations of the immigration laws. The government asserts that the civil/criminal distinction should not matter in the First Amendment context, but points to no case where a defendant was convicted for aiding and abetting a civil offense. We are not aware of any case that upholds a statute restricting such speech. Therefore, even if certain speech would constitute aiding and abetting when directed toward the commission of a crime, it would be constitutionally protected when aimed at inducing a civil

---

in *Freeman* is more similar to the one at issue in *Williams* than the operative verbs in Subsection (iv). *See* pp. 19–21, *supra*.

violation of law. And because unauthorized presence in the country is a civil violation rather than a crime, Subsection (iv) reaches beyond speech integral to a crime.

Next, aiding and abetting requires that the accused "assisted or participated" in the commission of the offense. For the reasons described above, we cannot construe Subsection (iv) as applying only to assistance for or participation in a violation of the immigration law; it is enough to encourage.

Further, aiding and abetting requires that a principal actually commit the underlying offense. *See id*. at 1149. There is no such requirement in Subsection (iv). The government argues that this should not matter for the First Amendment analysis because, citing the Model Penal Code § 2.06(3)(a)(ii), Subsection (iv) resembles an attempted aiding and abetting statute. The government's argument fails, however, because "[t]here is no general federal 'attempt' statute. [A] defendant . . . can only be found guilty of an attempt to commit a federal offense if the statute defining the offense also expressly proscribes an attempt." *United States v. Hopkins*, 703 F.2d 1102, 1104 (9th Cir. 1983). Subsection (iv) does not restrict attempt, unlike the other subsections of the statute.

Most fundamentally, Subsection (iv) looks nothing like an aiding and abetting statute. Just two lines below Subsection (iv)'s text, Congress required that anyone who "aids or abets the commission of any of the preceding acts" shall be punished as a principal. 8 U.S.C. § 1324(a)(1)(A)(v)(II). Further, Congress authored a general aiding and abetting statute, 18 U.S.C. § 2, which states that "[w]hoever commits an offense against the United States or aids, abets, counsels,

commands, induces or procures its commission, is punishable as a principal." Clearly, if Congress wanted Subsection (iv) to be an aiding and abetting statute, it would have included the words aiding and abetting. The statute instead manifests Congress' intent to restrict a broader range of activity, and that activity stretches beyond unprotected speech.

### C. Subsection (iv) Restricts A Substantial Amount of Protected Speech in Relation to its Legitimate Sweep

Because we conclude that Subsection (iv) reaches protected speech, we must now analyze whether the amount of protected speech the statute restricts is substantial in relation to its legitimate sweep. In plain terms, are the statute's improper applications too numerous to allow the statute to stand? "The concept of 'substantial overbreadth' is not readily reduced to an exact definition." *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). But, "[c]riminal statutes must be scrutinized with particular care" and "those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *City of Houston v. Hill*, 482 U.S. 451, 459 (1987). Although "substantial" does not have a precise meaning in this context, the Supreme Court has explained that a statute may be struck down if it is "susceptible of regular application to protected expression." *Id.* at 467. In other words, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Taxpayers for Vincent*, 466 U.S. at 801.

It is apparent that Subsection (iv) is susceptible to regular application to constitutionally protected speech and that there is a realistic (and actual) danger that the statute will infringe upon recognized First Amendment protections. Some of the situations raised in the supplemental briefing and at oral argument demonstrate the improper scope of this statute. While we are aware that the Supreme Court is skeptical of "fanciful hypotheticals" in overbreadth cases, we do not think that the scenarios raised here are fanciful. *See Williams*, 553 U.S. at 301. We think that they are part of every-day discussions in this country where citizens live side-by-side with non-citizens. Buttressing our assessment that the following hypotheticals are not overly speculative, the government has already shown a willingness to apply Subsection (iv) to potentially protected speech. *See Henderson*, 857 F. Supp. 2d at 193–94, 203–04.**[12]**

We begin with an obvious example from one of the *amicus* briefs: "a loving grandmother who urges her grandson

---

**[12]** Additionally, the City and County of San Francisco in its *amicus* brief represents that the government has repeatedly threatened its officials with violations of 8 U.S.C. § 1324. For example, "ICE Director Thomas Homan announced that he had asked Attorney General Sessions to determine whether sanctuary cities like San Francisco are 'committing a statutory crime' under section 1324." Further, San Francisco relates that "Director Homan renewed his threat in even starker terms. According to Director Homan, 'when a sanctuary city intentionally or knowingly shields an illegal alien from federal law enforcement, that is a violation of 8 U.S.C. 1324.' Director Homan announced that he was 'putting together a response plan' with 'the highest levels of the Department of Justice,' and ominously declared, 'This is not over.'" True, San Francisco reports that "[t]o the extent these threats have been tied to any specific prong of section 1324, they have been tied to the 'harboring' or 'transporting' prongs of that statute." *Id.* But not all of the threats were tied to a specific subsection, and the government might well turn to Subsection (iv).

to overstay his visa," by telling him "I encourage you to stay." Nothing in Subsection (iv) would prevent the grandmother from facing felony charges for her statement. Again, in *Williams*, the Supreme Court used almost identical language – "I encourage you to obtain child pornography" – to describe abstract advocacy immune from government prohibition. 553 U.S. at 300. The government has not responded persuasively to this point; it simply argues that the grandmother would not be subject to criminal charges because her statement was "not accompanied by assistance or other inducements." However, as we have detailed above, Subsection (iv) does not contain an act or assistance requirement.

Further, implying a *mens rea* requirement into the statute, and applying it only to speech to a particular person does not cure the statute's impermissible scope. Just because the grandmother wanted her words to encourage her grandson and said them directly to him does not render those words less protected under the First Amendment. We think that situations like this one, where a family member encourages another to stay in the country, or come to the country, are surely the most common form of encouragement or inducement within Subsection (iv)'s ambit.

The government similarly dismisses "marches, speeches, publications, and public debate expressing support for immigrants," as being subject to Subsection (iv)'s restrictions. Again, however, the government relies on its faulty construction of the statute to argue that such speech does not "assist" or "incentivize" an immigrant to come to, enter, or reside in the United States in violation of law. The statute, however, does not criminalize assistance or incentivizing; it makes it a felony to "encourage" or "induce."

A speech addressed to a gathered crowd,[13] or directed at undocumented individuals on social media,[14] in which the speaker said something along the lines of "I encourage all you folks out there without legal status to stay in the U.S.! We are in the process of trying to change the immigration laws, and the more we can show the potential hardship on people who have been in the country a long time, the better we can convince American citizens to fight for us and grant us a path to legalization," could constitute inducement or encouragement under the statute. But, this general advocacy could not be considered incitement because there is no imminent breach of the peace. It would not be aiding and abetting or solicitation because it is general and is not advocating a crime. Instead, it is pure advocacy on a hotly-debated issue in our society. Such "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)). Criminalizing expression like this threatens almost anyone willing to weigh in on the debate. *Cf. Alameda Newspapers, Inc. v. City of Oakland*, 95 F.3d 1406, 1414 (9th Cir. 1996) ("Cities, counties, and states have a long tradition of issuing pronouncements, proclamations, and statements of principle on a wide range of matters of public interest, including . . . immigration.").

---

[13] Speaking directly to a particular group of aliens, as opposed to the public at large, is within the scope of Subsection (iv) as we have construed it.

[14] The Supreme Court has made clear that "cyberspace . . . . and social media in particular" is "the most important place[] . . . for the exchange of views." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017).

Additionally, *amici* present several examples of professionals who work with immigrants whose speech might be chilled on account of Subsection (iv)'s breadth. The most common example cited is an attorney who tells her client that she should remain in the country while contesting removal – because, for example, non-citizens within the United States have greater due process rights than non-citizens outside the United States, or because, as a practical matter, the government may not physically remove her until removal proceedings are completed. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Under the statute's clear scope, the attorney's accurate advice could subject her to a felony charge. The government's arguments to the contrary are unavailing. First, undoubtedly, the attorney would *know* that telling an immigrant she would have greater rights if she remained here or that she may not be removed while in removal proceedings would encourage the immigrant to stay. And, we do not think construing Subsection (iv) to reach advice from attorneys endangers statutes like 18 U.S.C. § 2(a), the general aiding and abetting statute. An attorney can knowingly encourage a course of action without aiding or abetting it. Moreover, as we have explained, remaining in the country while undocumented, without more, is not a crime. More fundamentally, though, the government has already shown its intent to prosecute those citizens (attorneys or sympathetic lay persons) who give even general immigration advice. *See Henderson*, 857 F. Supp. 2d at 193.

The foregoing examples are not some parade of fanciful horribles. Instead, they represent real and constitutionally-protected conversations and advice that happen daily. They demonstrate that Subsection (iv)'s impermissible applications are real and substantial. Because Subsection (iv)'s legitimate sweep – which only reaches conduct not criminalized in the

other subsections of § 1324(a)(1)(A), and unprotected speech – is narrow, we hold that Subsection (iv) is overbroad under the First Amendment.**[15]**

## CONCLUSION

Subsection (iv) criminalizes a substantial amount of protected expression in relation to the statute's narrow legitimate sweep; thus, we hold that it is unconstitutionally overbroad in violation of the First Amendment. The judgment of the district court is **REVERSED** with respect to the "encourage or induce" counts, Counts 2 and 3 of the First Superseding Indictment. In accordance with the Memorandum disposition filed concurrently herewith, with respect to the mail fraud counts, Counts 5 and 6, the judgment of the district court is **AFFIRMED**.

Because two of the five counts of conviction are reversed, the sentence must be vacated and the case remanded for resentencing. *See United States v. Carter*, 2018 WL 5726694, at *8 (9th Cir. Nov. 2, 2018); *United States v.Davis*, 854 F.3d 601, 606 (9th Cir. 2017).

**REVERSED in part, AFFIRMED in part, sentence VACATED and REMANDED for resentencing.**

---

**[15]** Because we strike down Subsection (iv) as overbroad, we need not reach the separate issue of whether the statute is void for vagueness.